# UNITED STATES DISTRICT COURT
for the

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Yellow Ford Truck bearing Arizona License Plate )
18A2WC, currently located at 215 W. Elm Street, )
Farmington, New Mexico )

Case No. MR 23-1098

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ District of ___New Mexico___ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachement B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1153; 113(a)(3) | Assault with a dangerous weapon |
| 18 U.S.C. §§ 1153; 113(a)(6) | Assault resulting in serious bodily injury |
| 18 U.S.C. § 924(c)(1)(A)(iii) | Use of firearm in furtherance of a crime of violence |

The application is based on these facts:
See attached affidavit

☐ Continued on the attached sheet.
☐ Delayed notice of  30  days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Dustin Patterson
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephonically sworn and electronically signed  *(specify reliable electronic means)*.

Date: 05/29/2023

*B Paul Briones*
*Judge's signature*

City and state: Farmington, New Mexico

B. Paul Briones, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF YELLOW FORD TRUCK BEARING ARIZONA LICENSE PLATE 18A2WC, CURRENTLY LOCATED AT 215 W. ELM STREET, FARMINGTON, NEW MEXICO | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Dustin Patterson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been since May 2017. As such, I am a law enforcement officer of the United States and I am empowered by law to conduct investigations and to make arrests for criminal offenses. My current assignment is working as a Special Agent in Farmington, New Mexico, where I primarily investigate crimes that occur in Indian Country to include homicide, drug trafficking, aggravated assault, child sexual assault, kidnapping, and rape. Since joining the FBI, I received training at the FBI Academy in Quantico, Virginia and since the academy have completed numerous in-service trainings related to federal investigations. My training and experience as a Special Agent includes, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects and witnesses, writing affidavits, examining cellular telephones, managing confidential human sources, and collecting evidence.

2. Prior to being assigned to Farmington, New Mexico, I was a Special Agent in the Portland, Oregon field office, where I worked on the Clackamas County Interagency Task Force

(CCITF). I have participated in numerous complex drug trafficking and money laundering investigations.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## FEDERAL CHARGES RELEVANT TO THIS INVESTIGATION

4. I believe there is probable cause that TYRELL WILLIE has committed offenses involving violations of:

   a. 18 U.S.C. §§ 1153 and 113(a)(3)- Assault with a dangerous weapon in Indian Country;

   b. 18 U.S.C. §§ 1153 and 113(a)(6)- Assault resulting in serious bodily injury in Indian Country;

   c. 18 U.S.C. § 924(c)(1)(A)(iii) - Using and carrying a firearm during and in relation to a crime of violence, possessing a firearm in furtherance of such crime, and discharging said firearm.

## IDENTIFICATION OF THE PROPERTY TO BE SEARCHED

5. The property to be searched is a yellow Ford truck bearing AZ license plate 18A2WC, hereinafter the "Subject Vehicle" as described in Attachment A. The Subject Vehicle is currently located at the FBI Farmington Resident Agency located at 215 W. Elm Street, Farmington, New Mexico.

6. The applied-for warrant would authorize the search of the Subject Vehicle for the purpose of gathering evidence described in Attachment B.

**EVIDENCE SOUGHT DURING SEARCH**

7. Based upon statements received from witnesses and WILLIE, there is probable cause to believe a firearm and/or ammunition will be found in the SUBJECT VEHICLE. Witnesses identified the driver of the SUBJECT VEHICLE as the shooter at the scene. WILLIE admitted to investigators he kept extra ammunition in his vehicle. While a firearm was found outside of the vehicle, it is unclear if this is the same firearm that was used to commit the crimes alleged in this affidavit. Investigators should be permitted to seize any other firearms found in the vehicle in addition to ammunition.

8. Based on my training and experience, vehicles often contain documents and items showing who owns, occupies, or controls a vehicle being searched as well as show who is responsible for the items found in the vehicle, including evidence, contraband, fruits, and instrumentalities of a crime. These documents and items showing the identity of the person(s) in occupancy, control or ownership of a vehicle being searched include titles, registrations, insurance, gas receipts, repair bills and keys belonging to that vehicle. Seizure of these items would permit investigators

9. Based upon my training and experience, the use of digital media, including smartphones, tablets, cellular phones, and digital devices, has become part of everyday life. Most people use some or all of these devices to communicate. These communications include, but are not limited to, phone calls, text messages, SMS (Short Message Service) messaging, MMS (Multimedia Messaging Service) messaging, social media posts and messaging, and smartphone application messaging services. Smartphones, tablets, cellular phones, and digital devices are

frequently capable of storing messages, emails, social media communications, and communications made over smartphone applications. People often have social media applications or "apps" such as Facebook and Facebook Messenger downloaded on the cellular telephones. These apps allow users to utilize the social media features such as messaging directly on the cellular telephones. Facebook and Facebook Messenger can also be utilized on other personal electronic devices such as laptops, and tablets. People can access their Facebook accounts and send messages on multiple devices, including cellular telephones, laptops, and tablets.

10.  Based upon my training and experience, fingerprints are often left behind after an individual touches an item used to commit a crime. Here, there is probable cause to believe fingerprints may have been left behind on the SUBJECT VEHICLE, as well as on items seized from the SUBJECT VEHICLE, by the driver of the vehicle who also committed the crimes alleged in the affidavit. .

## PROBABLE CAUSE

### Investigation Summary

11.  On May 29, 2023, at approximately 4:40 a.m., Navajo Nation Criminal Investigator (CI) Dean Goldtooth notified the FBI that a shooting had occurred at 154 N 509 Road, Shiprock, San Juan County New Mexico, which is inside the exterior boundaries of the Navajo Nation reservation.  Based off the initial information received investigators learned a gunshot victim was being treated at Northern Navajo Medical Center and a suspect was in custody with minor injuries also being treated at Northern Navajo Medical Center.

12.  Upon arriving at the crime scene, 154 N 509 Road, Shiprock, New Mexico, investigators found a Navajo Nation marked patrol unit who had secured the scene.  The Navajo

Nation Police Office was identified as Sergeant Greyeyes and he provided the following information:

13. At approximately 3:32 a.m. Navajo Nation police department received multiple calls that a yellow truck was driving erratically and had damaged property in the area of 154 N 509 Road, Shiprock, New Mexico. Multiple units were dispatched for an area check which was conducted at 3:35 a.m. At approximately 3:45 a.m., officers notified dispatch that they were with a damaged Chevrolet Malibu near 225 Dine Drive, Shiprock, New Mexico, just around the corner from 154 N 509 Road, Shiprock, New Mexico. While at the scene, Sergeant Greyeyes noticed a yellow Ford truck drive by his location and recognized it as the possible suspect vehicle. Less than a minute later at 3:59 a.m., Sergeant Greyeyes heard gunshots and advised dispatch. Sergeant Greyeyes, Officer Foster, and Officer Simms immediately drove to the area of the gunshots and found the victim, John Doe, with a gunshot wound to the abdomen laying in the driveway of 154 N 509 Road, Shiprock, NM. At 4:00 a.m. Sergeant Greyeyes notified dispatch he needed EMS. Officer Foster and Officer Simms immediately drove away from the scene in an attempt to locate the yellow truck. Sergeant Greyeyes loaded John Doe into his patrol vehicle and took him to the hospital. Sergeant Greyeyes then returned to the residence to secure the scene.

14. At approximately 4:01 a.m., Office Foster and Office Simms located the suspect vehicle stalled near 100 N 509 Road, Shiprock, NM, and they conducted a high risk stop of the vehicle. The suspect, later identified as TYRELL WILLIE, stepped out of the driver side of the truck holding a shotgun. After being given commands to drop the gun, WILLIE, slid the shotgun under the truck. WILLIE was handcuffed by the officers. WILLIE complained his eye was

injured, and officers transported him to Northern Region Medical Center where his injured eye was treated.

15. After speaking with Sergeant Greyeyes, investigators processed the scene outside of 154 N 509 Road, Shiprock, NM. Investigators noted and photographed damage to the fence outside the residence as well as the damage to the fence of the neighbor's residence at 151 Toas Circle, Shiprock, NM. Investigators located two spent shotgun shells lying in the road out front of 154 N 509 Road, Shiprock, NM. The shotgun shells were pink with the manufacture name "Top Gun" printed along the shell.

16. After processing the scene outside of the residence, investigators went to 225 Dine Dr., Shiprock, NM to photograph the vehicle which had been involved in the hit and run with the yellow truck. While photographing the car, investigators were approached by a resident of the area identified here as Witness 1. Witness 1 stated that he walked outside early this morning after he "heard someone hauling ass" in the neighborhood. When he walked out, he watched as a "yellow or brown" Ford single cab pickup backed up into a Chevrolet Malibu and then drove off. Investigators noted yellow paint on the damaged Chevrolet Malibu.

17. After photographing the Chevrolet Malibu, investigators went to the scene where officers had stopped WILLIE in a yellow Ford truck bearing Arizona license plate 18A2WC (hereinafter, "Subject Vehicle".) The shotgun that WILLIE exited the Subject Vehicle with was lying in the dirt near the passenger door. Investigators photographed the Subject which had a broken taillight, and damage to the front and rear of the truck. Investigators secured and seized the shotgun which was lying in the dirt. The shotgun was loaded with four pink "Top Gun" shotgun shells which appeared to be the same brand and type of shell found at the scene of the shooting. Investigators placed evidence tape on the doors of the Subject Vehicle and arranged a

tow truck to take the Subject Vehicle to the FBI secure lot at 215 W Elm Street, Farmington, NM.  After processing the scene investigators travelled to the hospital to check the status of John Doe and speak with those involved.

### Interview of Jane Doe

18. Upon arriving at the hospital, investigators located and spoke with John Doe's mother, who is identified in this affidavit as Jane Doe.  At the time of the interview, Jane Doe did not have any visible injuries to her neck or other body parts.  Jane Doe was interviewed and provided the following information.

19. At approximately 10:30 p.m. on May 28, 2023, Jane Doe received a Facebook messenger message from "TJ" (known to investigators as WILLIE) a man she had met on Facebook approximately two weeks before.  Jane Doe had met with WILLIE to "hangout" on approximately two other occasions.  WILLIE messaged Jane Doe and asked if he could come over to her house, to which she agreed.

20. At approximately 2:00 a.m., WILLIE arrived at her house driving a yellow older truck.  When WILLIE arrived, Jane Doe walked out to the truck and got into the passenger seat of the truck.  Jane Doe noted that WILLIE was intoxicated.  Jane Doe did not see any firearms in the truck and she was not afraid of WILLIE because of their previous interactions.  The two spoke for about 15 minutes, when WILLIE got upset for an unknown reason and walked to the passenger side of the truck and opened the door.  WILLIE then put his forearm into Jane Doe's throat and tried to throw Jane Doe out of his truck.  Jane Doe told him she was going to scream for her son if he didn't stop.  WILLIE didn't let go so she screamed.  Jane Doe's son, John Doe came out of the residence and grabbed WILLIE and threw him to the ground.  When WILLIE fell to the ground, Jane Doe got out of the passenger seat and got behind John Doe.  WILLIE got

up and got into the driver seat of the yellow truck and then drove away after hitting her fence and backing into the neighbor's fence.

21.     After driving away, Jane Doe, noticed that WILLIE drove around the block in the truck two times. After driving around the two times, Jane Doe believed that WILLIE left the area for approximately 30 minutes. After approximately 30 minutes John Doe told Jane Doe he believed he heard the truck. John Doe walked outside. While John Doe was standing outside, Jane Doe saw the truck pull up slowly with the headlights off. That is when Jane Doe heard the gunshots. Then she heard John Doe yell and when she walked outside she saw her son grab his shirt near his midsection.

22.     Almost immediately after the shots, Jane Doe, saw two marked police officers and told them her son had been shot and the guy who shot him was driving away. One of the officers drove off in the direction of the suspect vehicle and the second officer aided John Doe. He was transported by the officer to the hospital and Jane Doe followed.

**Interview of WILLIE**

23.     After speaking with Jane Doe, investigators interviewed WILLIE who was being treated in a hospital bed for an eye injury. WILLIE was handcuffed in front of his body. After entering the room, the affiant read WILLIE his Miranda rights from the FBI Advice of Rights form. WILLIE acknowledged he understood his rights and wished to speak with investigators. WILLIE stated he was sober and understood what was happening. WILLIE state he had drank a double shooter and beer hours ago. WILLIE provided the following information:

24.     Last night WILLIE received a message from a woman he has known for about three weeks, Jane Doe. WILLIE accepted the invite and drove to her residence where he parked in the front driveway. WILLIE and Jane Doe sat in the truck for approximately an hour. After

8

an hour WILLIE told Jane Doe he needed to leave to take care of his kids but she refused to get out of his truck. WILLIE then went to the passenger side of the truck and grabbed on Jane Doe's arm to pull her out of the truck. Jane Doe immediately started yelling for help and three men who WILLIE believed were Jane Doe's brother walked out of her residence and immediately started beating WILLIE. WILLIE saw one of the men holding and beating him with a screwdriver.

25.     WILLIE was able to use his wrestling skills to crawl away and get into his truck. Once he got into his truck, WILLIE grabbed a shotgun which he owns and keeps in his truck. When he grabbed the shotgun he fired one round and was unsure if he hit anyone. After he fired the shotgun round the men backed away, and WILLIE was able to drive off. As soon as he drove off, WILLIE was stopped by police. WILLIE did not circle the block or hit a fence while he was leaving. WILLIE stated he keeps the shotgun loaded and has extra rounds in his truck. WILLIE purchased birdshot and the shotgun shells are pink in support of breast cancer awareness.

26.     After listening to WILLIE's initial narrative, investigators confronted WILLIE and told him his story did not line up with the evidence gather at the scene, including the facts that yellow paint was found on a vehicle that had been struck in the neighborhood, that officers had seen him drive by just prior to the shooting, and that two spent shotgun shells had been found in the street not the driveway. WILLIE then stated he may have drove around the block before going to Jane Doe's house, but definitely not after. WILLIE continued to reiterate that three men had beat him and that's why he fired his gun. He denied leaving the residence and returning and denied firing more than one shot.

27. Based upon information and belief, WILLIE and John Doe are members of the Navajo Nation.

### Conclusion

28. Based on the facts and evidence gathered during this investigation, including the Navajo Police Department dispatch log, I have probable cause to believe and do believe that WILLIE was involved in a physical and verbal altercation with John Doe and Jane Doe outside of 154 N 509 Road, Shiprock, NM. Following the initial confrontation at approximately 3:30 a.m., WILLIE drove away from the residence in the Subject Vehicle damaging multiple fences which led to police being called. WILLIE circled the block a number of times, during which time he hit a parked Chevrolet Malibu transferring yellow paint. Officers arrived in the area at approximately 3:35 a.m. for an area check and were unable to locate the suspect vehicle but noted the damage to the Malibu. A short time later while investigating the disturbance Sergeant Greyeyes saw the Subject Vehicle pass by him. Less than a minute later shots were fired and John Doe was shot in the abdomen. WILLIE attempted to flee the area but was apprehended by police. During the interrogation of WILLIE he admitted to firing his shotgun one time, alleging self-defense. Based on the information provided by officers on scene as well as the evidence gathered at the scene, WILLIE shot John Doe while WILLIE was located in the street and John Doe was located a distance away in the driveway of the residence approximately 30 minutes after the original confrontation.

29. I have probable cause to believe, and I do believe that WILLIE shot John Doe with a shotgun, thereby committing assault with a dangerous weapon in Indian Country in violation of 18 U.S.C. §§ 1153 and 113(a)(3), assault resulting in serious bodily injury in Indian Country in violation of 18 U.S.C. §§ 1153 and 113(a)(6) and using and carrying a firearm during

and in relation to a crime of violence, possessing a firearm in furtherance of such crime, and discharging said firearm in violation 18 U.S.C. § 924(c)(1)(A)(iii).

30. Based off the information learned during the investigation including the admission by WILLIE, I have probable cause to believe and do believe that the Subject Vehicle contains evidence of the crimes alleged including shotgun ammunition and WILLIE's cellular phone. The Subject Vehicle is currently in the lawful possession of the FBI. It came into the FBI's possession after it was seized after WILLIE was arrested. After the Subject Vehicle was seized it was towed to the FBI secured lot at 215 W Elm Street, Farmington, NM.

31. In my training and experience, I know that the Subject Vehicle has been kept in the same manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Subject Vehicle was first seized.

32. Your Affiant swears this information to be true and correct to the best of his knowledge and belief.

## CONCLUSION

33. I submit that this affidavit supports probable cause for a search warrant authorizing the search of the Subject Vehicle described in Attachment A to seize the items described in Attachment B.

Respectfully submitted,

Dustin Patterson
FBI Special Agent
Farmington, New Mexico


Subscribed and sworn telephonically
on May 29, 2023:

_____
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property to Be Searched

The property to be searched is a yellow Ford truck bearing Arizona license plate 18A2WC currently located at the FBI secured lot at 215 W Elm Street, Farmington, NM. The vehicle to be searched is shown in the photograph below.



## ATTACHMENT B

## Items to Be Seized

The items to be searched for, seized, and examined, are those items located in the Subject Vehicle referenced in Attachment A, that contain evidence, contraband, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1153; 113(a)(3); 113(a)(6) and 18 U.S.C. § 924(c)(1)(A)(iii). The items to be seized cover the period of May 1, 2023 through May 29, 2023.

1. The items referenced above to be searched for, seized, and examined are as follows:

   a. Firearms and ammunition;

   c. Documents and items of personal property that tend to identify the person(s) in occupancy, control, or ownership of the Subject Vehicle, including titles, registrations, insurance, gas receipts, repair bills and keys belonging to that vehicle.

   d. Cellular telephones and other electronic devices such as laptops and tablets capable of storing data that constitutes evidence or the instrumentality of the alleged crimes.

   e. Latent prints to be collected from the interior and exterior of the Subject Vehicle in addition to prints to be collected from items seized from the Subject Vehicle.